**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERIC S. BERNSTEIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:05-cv-311 (WWE) |
| | : | |
| METROPOLITAN LIFE INSURANCE COMPANY and SBC COMMUNICATIONS, INC., | : | |
| | : | |
| Defendants. | : | |

**RULINGS ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The underlying motions arise from plaintiff Eric S. Bernstein's action to recover alleged damages caused by defendants Metropolitan Life Insurance Company ("MetLife") and SBC Communications, Inc.'s ("SBC") failure to pay insurance benefits owed to plaintiff as the named beneficiary under his deceased father's insurance policy. SBC moves for summary judgment, claiming that plaintiff is not entitled to such insurance proceeds because the deceased was not covered by the insurance policy at the time of his death.[1] MetLife moves for summary judgment on the ground that it was never informed of plaintiff's claim for supplemental life benefits, exercised no authority over the decision not to provide such benefits and is, therefore, an improper party to

---

[1] SBC also claimed that summary judgment was warranted on plaintiff's state law claims because such claims were preempted by ERISA. Since plaintiff has conceded this point, the Court will not address it.

1

this action. Plaintiff cross-moves for summary judgment on the basis that he is entitled to judgment as a matter of law.

## BACKGROUND

In 2000, defendant MetLife issued a group life insurance policy to SBC. SBC, in turn, funded benefits under a Group Life Insurance Program, an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § § 1001, et seq. ("ERISA") and sponsored by SBC.

As a retiree from SBC, Joel Bernstein was entitled to purchase supplemental life insurance coverage under the plan. He did so, purchasing supplemental life insurance at least as early as January 1, 1996. Under this policy, Joel Bernstein named his wife, Sandra Katz-Bernstein, as the primary beneficiary and plaintiff Eric Bernstein as the contingent beneficiary.

In September 2002, Joel Bernstein and Sandra Katz-Bernstein executed a separation agreement in which Joel Bernstein named plaintiff as the primary beneficiary and Sandra Katz-Bernstein as the contingent beneficiary of his life insurance policy. The separation agreement also provided that Joel Bernstein pay the insurance premiums and instructed SBC to notify plaintiff in the event Joel Bernstein neglected to pay the insurance premiums and the insurance policy was subject to cancellation.

Pursuant to the separation agreement, on December 16, 2002, Joel Bernstein's attorney, David Dworski, requested a change of beneficiary form from SBC. On or about August 8, 2003, Attorney Dworski returned a completed "Beneficiary Designation Form" to SBC, with a letter requesting that notice of nonpayment of premiums be sent to Mr. Eric Bernstein, 16405 Big Cypress Drive, Edmond, OK 73013 and Ms. Sandra

Katz-Bernstein, 1931 Prairie Square, Apartment #334, Schaumberg, IL 60173. Subsequently, on August 14, 2003, SBC sent Joel Bernstein a "Beneficiary Form Acceptance Letter," stating that SBC had "recently received and reviewed the Beneficiary Designation Form that [he] submitted . . . . [and that the] form has been accepted and will be retained in the service center records." SBC Brief, 3. SBC did not specifically address the request that it notify the beneficiaries in the event of a non-payment of premiums or the cancellation of the policy as a result of such nonpayment.

Joel Bernstein made his last premium payment for supplementary life insurance coverage under the insurance plan on May 19, 2003. On September 9, 2003, SBC sent a "Billing Notice" to Joel Bernstein, informing him that he had a previous balance of $12.01 and current charges of $43.00. The notice also stated that "[t]o continue coverage after 08-31-2003, your payment for the previous balance must be received by 10-30-2003. Current balance is due by 10-01-2003." SBC Brief, 3.

Thereafter, not having received payment after the September 9, 2003 notice, SBC sent Joel Bernstein another "Billing Notice" dated October 9, 2003. This notice indicated that he was in arrears in the amount of $55.01 and had current charges of $43.00. The notice conveyed the same warning as the previous one: "[t]o continue coverage after 08-31-2003, your payment for the previous balance must be received by 10-30-2003. Current balance is due by 11-01-2003." Id. SBC never notified plaintiff or Sandra Katz-Bernstein of Joel Bernstein's failure to submit payment.

SBC did not receive any further payments from Joel Bernstein and, on November 6, 2003, SBC sent him notice that his coverage was cancelled as of September 1, 2003. Again, SBC never notified plaintiff or Sandra Katz-Bernstein of the

cancellation of the coverage.

Joel Bernstein died on January 15, 2004  On or about January 18, 2004, Sandra Katz-Bernstein sent SBC a check for $184.01, the amount owed on the insurance policy.  On or about February 20, 2004, SBC refunded this full amount because Joel Bernstein's coverage had lapsed prior to his death.  Following SBC's denial of plaintiff's claim for benefits under the insurance plan, plaintiff filed this action.

Plaintiff claims that defendants SBC and MetLife erroneously withheld the benefits due to him, the designated beneficiary.  He argues that SBC's failure to notify him or Sandra Katz-Bernstein of either Joel Bernstein's failure to remit past premium payments or of the subsequent cancellation of the policy as of September 1, 2003 was in contravention of SBC's agreement to provide such notification.[2]

SBC moves for summary judgment on the basis that it properly withheld supplemental life benefits because the coverage for the policy providing such benefits had lapsed over four months before Joel Bernstein's death.  It argues that it had no affirmative duty to inform plaintiff that Joel Bernstein had not paid his premium or that the policy had been cancelled.  It asserts that, under ERISA, an insurance carrier  has no duty to inform beneficiaries of ERISA-governed life insurance policies of the nonpayment of insurance premiums.

---

[2]Although plaintiff's Complaint states that "[t]he policy was in full force and effect at the time of the death of the said Joel E. Bernstein," plaintiff does not rely on this argument in his cross-motion for summary judgment.  Accordingly, the Court will conclude from the undisputed facts that Joel Bernstein failed to pay the premiums and that his policy was no longer in effect as of September 1, 2003.

4

Defendant MetLife moves for summary judgment, arguing that it was never presented with plaintiff's claim for supplemental life benefits under Joel Bernstein's policy.  Therefore, MetLife alleges, it was never required to approve or deny plaintiff's claim and cannot now be held liable for refusal to pay such benefits.

Plaintiff cross-moves for summary judgment on the ground that he is entitled to judgment as a matter of law.  He asserts that SBC, as a fiduciary under ERISA, had a duty to disclose material information to him as beneficiary and that plaintiff's specific request that he be informed of any nonpayments entitled him to the disclosure of this particular information.

## DISCUSSION

### I.      Defendants' Motions for Summary Judgment

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 24.

**1.    Defendant SBC**

SBC claims that it is entitled to summary judgment because it fully complied with the requirements set forth by ERISA.  It also argues that because Joel Bernstein's supplemental life insurance coverage was cancelled as of September 1, 2003, it had no duty to pay supplemental life insurance benefits to plaintiff after Joel Bernstein's death on January 15, 2004.  It asserts it had no duty to inform plaintiff of his father's delinquency in payments.

The gist of plaintiff's claim is that because SBC failed to give him and Sandra Katz-Bernstein proper notice of the nonpayment of premiums as they had requested, Sandra Katz-Bernstein's prompt payment of past due premiums on January 18, 2004 should have been accepted and the insurance coverage should not have been cancelled.  Plaintiff argues that SBC did owe him a fiduciary duty and should have informed him of material facts related to the policy, including his father's nonpayment of premiums.  He also claims that SBC's acceptance of his attorney's letter requesting that plaintiff be informed of Joel Bernstein's failure to pay created an affirmative duty on the part of SBC to do so.

### A. Fiduciary Duty

Plaintiff asserts that pursuant to ERISA, SBC was a fiduciary of the insurance plan and, as such, had duties of loyalty and care and obligations to act solely in the interest of the benefit plan and its participants and beneficiaries. 29 U.S.C. § § 1104, 1106. Under ERISA, a "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, or who has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). See Mortgage Lenders Network U.S.A. v. Coresource, Inc., 335 F.Supp.2d 313, 318 (D.Conn. 2004).

SBC, as the plan administrator, was vested with the authority to determine whether supplemental life insurance coverage existed for Joel Bernstein and to deny the supplemental life benefits pursuant to the plan. Because it possessed this authority and control, SBC fulfills ERISA's definition of a "fiduciary."

### B. Duty to Inform

Plaintiff asserts that, as fiduciary, SBC had the duty to disclose material information to the beneficiary regarding the administration and maintenance of the plan. Specifically, plaintiff claims that he should have been informed of Joel Bernstein's failure to pay the outstanding premiums. He also claims that SBC's acceptance of the Change in Beneficiary Designation Form, sent under cover of the letter requesting that plaintiff and Sandra Katz-Bernstein be kept apprised of Joel Bernstein's payment of premiums, further established SBC's obligation to disclose this specific information.

"Congress invoked the common law of trusts to define the general scope of [a fiduciary's] responsibility." Varity Corp. v. Howe, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).  The Restatement (Second) of Trusts provides in relevant part, that "[the trustee] is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection . . . ."  Restatement (Second) of Torts §  173, cmt. d (1959).  This common law duty is reflected in the provisions of ERISA which set forth the requirement that the fiduciary furnish to all beneficiaries and participants a summary plan description (29 U.S.C. section 1024(b)) and notice of any "material modification" to the plan (29 U.S.C. section 1022(a)).

"Many of our sister circuits have held . . . that once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance . . . ." Krohn v. Huron Memorial Hospital, 173 F.3d 542, 547 (6th Cir. 1999) (citations omitted).  "Accordingly, we agree with the conclusion of our sister circuits that the 'duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Id. at 548 (quoting from  Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3rd Cir. 1993)).

"However, under ERISA the administrator is not a personal trustee but rather a fiduciary for the limited purpose of overseeing whatever plan it creates for what may be thousands of employees and other beneficiaries.  See 29 U.S.C. § 1002(21)(A)(iii).

Ordinary trust principles cannot be transferred wholesale, and, where ERISA itself specifies a notice requirement, courts must be especially cautious in creating additional ones." Barrs v. Lockheed Martin Corp., 287 F.3d 202, 207 (1st Cir. 2002).

> Absent a promise or misrepresentation, the courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances. This view reflects ERISA's focus on limited and general reporting and disclosure requirements, 29 U.S.C. § § 1021, 1022, 1024, and also reflects the enormous burdens an obligation to proffer individualized advice would inflict on plan administrators. In general, increased burdens necessarily increase costs, discourage employers from offering plans, and reduce benefits to employees.

Id. at 207-08.

"ERISA does not require plan administrators to investigate each participant's circumstances and prepare advisory opinions for literally thousands of employees." Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 817-18 (7th Cir. 1997). See Childers v. Northwest Airlines, Inc., 688 F.Supp. 1357, 1361 (D.Minn. 1988) (under ERISA, a fiduciary does not have a duty to provide individualized notice about the effect a specific event may have on the eligibility of a participant or beneficiary to receive benefits).

Similarly, in Kerns v. Benefit Trust Life Ins. Co., 790 F.Supp.1456 (E.D.Mo. 1992), the court concluded that the fiduciary does not have a duty to notify beneficiaries of such individualized information.

> To stretch the fiduciary duty under ERISA that far would require that whenever an employer is late in making a premium payment and is in danger of cancellation, someone – usually, the insurance company, would have to notify each participant and beneficiary of the plan. This would require keeping, and constantly updating, records of every employee, every employee's dependents and every dependent's potential life insurance beneficiaries. The burden, and expense, would be enormous. The fiduciary duty under ERISA is not that broad.

Id. at 1462.

Plaintiff attempts to distinguish both Kerns and Barrs from the present litigation, claiming that neither case presents the fact scenario here; namely, that plaintiff requested specific information and that SBC, in accepting the letter regarding same, assumed the duty to provide such information. Plaintiff's arguments are unavailing.

In Kerns, the court held that defendant's failure to notify the beneficiary of participant's nonpayment of premiums was not a breach of its fiduciary duty under ERISA. Plaintiff asserts that Kerns is distinguishable because it does not involve a specific request from the beneficiary for notice of nonpayment of premiums. He argues that his letter to SBC created such a duty. However, Kerns stands for the proposition that such duty may not be imputed to the fiduciary. "While the fiduciary may have a duty to inform employees and other named insureds of an employer's nonpayment of premiums, this Court will not extend that duty so far as to the beneficiaries of life insurance policies." Kerns, 790 F. Supp. at 1462.

In Barrs, plaintiff was the former wife of the plan participant, James Barrs. Plaintiff was named as the irrevocable beneficiary of all of Barrs' then-existing insurance policies. Plaintiff claims, *inter alia*, that defendant breached its fiduciary duty based on its failure to provide her with the plan information she had requested and

which defendant had promised to supply. Barrs, 287 F.3d at 205.³  The court did not resolve whether there is a fiduciary duty to inform a beneficiary when the fiduciary has made a specific commitment to do so, but "accepting this undisputed premise for purposes of the present case," the court accepted the parties' assertion that defendant's *explicit* promise to do so created a "specific fiduciary obligation enforceable under ERISA." Id. at 210.

Even if an explicit promise to provide information to a beneficiary is enough to burden a fiduciary with such duty, in this instance, there was no such promise by SBC that it would inform plaintiff of his father's failure to submit premium payments. Although plaintiff did make the request and included the letter indicating same with the submission of his "Beneficiary Designation Form," SBC never responded to this request nor acknowledged receipt of the letter in its acceptance of the form.   Plaintiff argues that the presence of the letter is sufficient to establish an affirmative duty on the part of SBC to honor his request for information.  However, in the absence of an explicit promise to go further, a fiduciary's duty to inform cannot extend beyond the perimeters established by ERISA.

Finding that there was no such extension of duty here, SBC was under no obligation to inform plaintiff of his father's nonpayment of premiums and properly denied plaintiff the supplemental life benefits.  The Court will grant SBC's motion for summary judgment.

---

³Defendant had sent notification to plaintiff of ex-husband's termination, but because plaintiff had moved without informing defendant, the letter did not reach her.

**2.	Defendant MetLife**

MetLife asserts that it issued a group life insurance policy to defendant SBC, which funded benefits to Joel Bernstein under an employee welfare benefit plan governed by ERISA.  Upon Joel Bernstein's death, plaintiff submitted a claim to SBC for a basic life insurance benefit of $50,000.  Because SBC determined that coverage was available for this benefit pursuant to the insurance plan, it forwarded the claim to MetLife, which processed and approved payment of the claim.

Plaintiff then submitted a claim to SBC for supplemental life benefits in the amount of $100,000.  SBC determined that this coverage did not exist because of Joel Bernstein's nonpayment of premiums.  Because of this determination, SBC never presented the claim to MetLife.

MetLife claims that it is entitled to summary judgment because it was never notified of Joel Bernstein's claim for supplemental life insurance coverage and, therefore, that it is not responsible for denial of same.  MetLife was never required to approve or deny plaintiff's claim for the supplemental life benefits.  Therefore, MetLife did not have a fiduciary duty towards plaintiff and is an improper party to this action. See 29 U.S.C. § 1002(21)(A).

Because plaintiff does not assert an argument against MetLife in the instant matter and because the Court finds that MetLife is not a proper party to this case, the Court will grant MetLife's motion for summary judgment.

**II.	Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff has filed a cross-motion for summary judgment, claiming that he is entitled to judgment as a matter of law in his cause of action against defendants SBC

and MetLife. Because the Court will grant defendants' motion for summary judgment on the merits, it will deny plaintiff's cross-motion.

## CONCLUSION

For the foregoing reasons, defendant SBC's motion for summary judgment [Doc. #39] is GRANTED. Defendant MetLife's motion for summary judgment [Doc. #42] is GRANTED. Plaintiff's cross-motion for summary judgment [Doc. #47] is DENIED.

Dated this 28th day of September, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge